**UNITED STATES of America ex rel. Edward J. BROCK, Petitioner,**

v.

**J. E. LaVALLEE, Warden, Clinton Prison, Clinton County, New York, Respondent.**

**No. 69 Civil 3456.**

United States District Court
S. D. New York.

Nov. 1, 1969.

Edward J. Brock, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondent, Steven M. Hochberg, Deputy Asst. Atty. Gen., of counsel.

EDWARD WEINFELD, District Judge.

Petitioner, now serving a sentence of from twenty years to life at Clinton Prison, Dannemora, New York, imposed under a judgment of conviction for second degree murder entered in Bronx County Court in June 1948, seeks his release upon a federal writ of habeas corpus. Petitioner had been indicted for first degree felony murder and was permitted to plead guilty to the lesser offense. He was represented by three court-appointed counsel when he was granted permission to withdraw his plea of not guilty to the first degree charge and to plead to the lesser offense, and also when he was sentenced.

The petition is grounded upon allegations that petitioner's constitutional

rights under the Fifth, Sixth and Fourteenth Amendments to the Federal Constitution were violated. The first degree murder charge was predicated upon a claim that petitioner, who took to flight after attempting to steal an automobile, shot and killed a pursuer. Upon his sentencing, two other indictments charging him with robbery in the first degree and with attempted grand larceny were dismissed. The judgment of conviction remained without challenge for almost twenty years.

In November 1967 petitioner applied to the state courts for a writ of error coram nobis, the pertinent allegations of which were summarized by the coram nobis court as follows: "that [petitioner] was not effectively represented by assigned counsel; * * * that the plea of guilty was coerced in that defendant had been subjected to questioning by the prosecutor and a statement obtained in response thereto which rendered it impossible to proceed to trial; and * * * that the court did not advise defendant of the possible consequences of his plea of guilty." The court, noting that the petition abounded in conclusory allegations, dismissed it without a hearing, finding that no showing had been made of inadequate representation, that the guilty plea waived any objections to the confession, and holding there was no requirement that a defendant about to plead guilty be advised of the consequences of his plea. Upon appeal to the Appellate Division petitioner was represented by Legal Aid counsel. The only claim then urged was that petitioner's plea of guilty was entered without the knowledge and understanding required by due process of law

—specifically, that he was never informed of the range of punishment which might be imposed. In February 1969 the Appellate Division affirmed without opinion, 31 A.D.2d 892, 298 N.Y.S.2d 902; in March 1969 leave to appeal to the New York Court of Appeals was denied.

■ The petitioner instituted this proceeding in August 1969. The present allegations of violations of constitutional rights, which quote extensively from constitutional authorities, are so freewheeling that it is necessary to separate the various claims. The original petition, as expanded by his traverse to the state's return, contains conclusory allegations which in broad terms charge that the guilty plea (1) was not knowingly and understandingly made because the consequences of the plea and the range of punishment were never adequately explained to him; (2) was coerced by the existence of his confession, "whose validity has never been tested"; (3) was not voluntary because the threat of a death sentence upon conviction after a jury trial of first degree murder[1] discouraged him from exercising his Sixth Amendment right to trial by jury and his Fifth Amendment right not to plead guilty; and (4) was the result of inadequate representation by counsel.[2] The third claim has never been presented to the state courts.[3] The second and fourth claims, although initially raised in the coram nobis application, were abandoned on appeal.[4] Thus, the only claim as to which petitioner has exhausted his state remedies is that he was not informed of the range of punishment, in consequence of which the plea, considering his age and his

1. *See* N.Y.Penal Law of 1909, §§ 1045, 1045-a, ch. 67, §§ 1–2, [1937] Laws of N.Y. 121, *amending* ch. 88, § 1045, 1 [1909] Laws of N.Y. 141, as *amended* (repealed 1967).

2. Petitioner also asserts he was deprived of his right to appeal under the Fourteenth Amendment by the failure of court and counsel to advise him of his right to appeal and by the statute under which he was committed.

3. Similarly, petitioner has never raised any claim before the state courts of denial of his right to appeal. *See* note 2 *supra*.

4. Petitioner's failure to pursue a claim through the state appellate courts constitutes a failure to exhaust his state remedies in regard to that claim. *Cf.* United States *ex rel.* Candelaria v. Mancusi, 284 F.Supp. 171 (S.D.N.Y.1968); United States *ex rel.* Jiggetts v. Follette, 260 F.Supp. 301 (S.D.N.Y.1966).

mental capacity, was not knowingly or understandingly entered.

Other than the fact that he was sixteen years of age and the assertion that he was mentally retarded at the time of entry of the plea, no evidential facts are set forth to support his contention that he was unaware of its consequences. Petitioner was represented by three court-appointed attorneys from the time of his indictment in January 1948, some five months before the plea; he had the benefit of their advice, guidance and counsel from them on through to the entry of the plea and his sentencing.[5] He had been found, following his psychiatric examination, mentally competent to stand trial. Although petitioner claims he was mentally retarded, it is not alleged that he was without mental capacity to confer with counsel with a reasonable degree of rational understanding, or that he was without a rational understanding of the proceedings against him.[6]

There is no claim that during the five-month period counsel represented petitioner they had not adequately consulted with him in preparation for trial or had failed to conduct investigations incidental thereto. The record indicates that immediately prior to his counsel's motion made in his presence for the withdrawal of his not guilty plea to the first degree murder charge and to the state's consent to the acceptance of the lesser plea, his lawyers conferred with the court and then with petitioner. He makes no mention of these conferences.

He does not set forth the details of his discussion at the conference with his lawyers; he omits to state what they told him of the discussion at the bench conference; what advice they gave him; or what inquiry, if any, he made of them with respect to the proposed guilty plea. It is reasonable to assume that his lawyers did advise him of the consequences of the plea.[7] This assumption is strongly buttressed by the circumstance that the court, upon the acceptance of the plea to murder in the second degree, was without discretion other than to impose the very sentence it did.[8] Indeed, petitioner himself heard his counsel, in his plea to the court, state, "the Court's hands are tied by statute as to what must be done with [petitioner]."[9] The failure of petitioner to submit an affidavit from his attorneys or an explanation for its absence weighs heavily, against him;[10] also, the twenty-year delay in making his claim—the result of which is to make both the refutation of his claims and reprosecution more difficult—challenges his good faith in instituting this proceeding.[11]

Following the conferences referred to above and prior to the acceptance of petitioner's guilty plea, one of his lawyers and the prosecutor each made a statement to the court. While no doubt the more prudent course would have been for the court personally to have questioned petitioner before acceptance of the plea, as was the general practice in the federal courts and as is

5. *Cf.* United States ex rel. Finn v. Klein, 271 F.Supp. 513, 515–516 (S.D.N.Y. 1967).

6. *Cf.* Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).

7. *See* United States *ex rel.* Brooks v. McMann, 408 F.2d 823, 826 (2d Cir. 1969).

8. *See* N.Y.Penal Law of 1909, § 1048, ch. 32, § 1, [1928] Laws of N.Y. 31, *amending* ch. 88, § 1048, 1 [1909] Laws of N.Y. 141 (repealed 1967).

9. Sentencing minutes, June 9, 1948, p. 1.

10. United States *ex rel.* Brooks v. McMann, 408 F.2d 823, 826 (2d Cir. 1969); United States *ex rel.* Homchak v. New York, 323 F.2d 449 (2d Cir. 1963), *cert. denied*, 376 U.S. 919, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964).

11. *See* United States *ex rel.* Brooks v. McMann, 408 F.2d 823, 826 (2d Cir. 1969); United States *ex rel.* Mc Grath v. LaVallee, 319 F.2d 308, 313 (2d Cir. 1963); People v. Nixon, 21 N.Y.2d 338, 352, 287 N.Y.S.2d 659, 670, 234 N.E.2d 687 (1967), *cert. denied sub nom.* Robinson v. New York, 393 U.S. 1067, 89 S.Ct. 721, 21 L.Ed.2d 709 (1969).

now mandated under Rule 11 of the Federal Rules of Criminal Procedure,[12] there is no constitutional requirement that any particular procedure be followed.[13] Reliance by a court upon the advice given by counsel to an accused in the acceptance of a plea does not by itself taint it as one not understandingly or knowingly made. The matter is one of reality and not ritual. The essential question whether the plea was so made rests upon the reasonable inferences to be drawn from all the surrounding facts and circumstances.[14] Upon the circumstances here presented—petitioner's representation by attorneys at all significant times from indictment through to his guilty plea and sentence; the absence of any claim that there had not at all times been adequate consultation with his attorneys, or that he did not have capacity to consult with them, or that he did not have an understanding of the proceedings against him; the assumption that petitioner was properly advised by his lawyers of the consequences of his guilty plea and his failure to make the claim for twenty years

—his conclusory but non-evidential allegations do not warrant a hearing.[15] As this Court has stated, "Merely culling language from Federal and state authorities, as petitioner has done, will not satisfy the requirement that serious charges have some basis in fact." [16]

But entirely apart from the lack of evidential support for the foregoing claim, a hearing is further foreclosed at this time because that claim is closely intertwined with another ground of involuntariness which now appears to form his principal contention, to wit, that under concepts derived from *United States v. Jackson,*[17] the threat of the death penalty upon a jury trial played a disproportionate part in encouraging his guilty plea. The *Jackson* claim has never been presented to the state courts. And petitioner's conviction antedates by twenty years the *Jackson* doctrine directed to a statute that "needlessly penalizes the assertion of a constitutional right." [18] That the doctrine will necessarily apply to New York statutes or to this petitioner is by no means a foregone conclusion.[19] Thus, not only has

12. *See* McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

13. McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *cf.* Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) (per curiam). *But cf.* Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

14. *See* United States *ex rel.* Brooks v. McMann, 408 F.2d 823 (2d Cir. 1969); United States *ex rel.* McGrath v. LaVallee, 319 F.2d 308, 315 (2d Cir. 1963) (Friendly, J., concurring); People v. Nixon, 21 N.Y.2d 338, 350–356, 287 N.Y.S.2d 659, 667–673, 234 N.E.2d 687 (1967), *cert. denied sub nom.* Robinson v. New York, 393 U.S. 1067, 89 S.Ct. 721, 21 L.Ed.2d 709 (1969).

15. *See* United States *ex rel.* Rosen v. Follette, 409 F.2d 1042 (2d Cir. 1969) (en banc).

16. United States *ex rel.* Best v. Fay, 239 F.Supp. 632, 634 (S.D.N.Y.1965), *aff'd per curiam,* 365 F.2d 832 (2d Cir. 1966).

17. 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

18. 390 U.S. at 583, 88 S.Ct. at 1217; *see* North Carolina v. Pearce, 395 U.S. 711, 724, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

19. The New York statutory scheme for first and second degree murder in existence at the time of petitioner's conviction differed from the Federal Kidnapping Act, 18 U.S.C. § 1201(a) (1964), considered in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). Under the federal statute the death penalty could not be imposed unless the jury affirmatively so recommended; upon a guilty plea or trial to the court the death penalty could not be imposed. Under New York law the death penalty was mandatory unless the jury recommended life imprisonment and the trial judge accepted that recommendation. A defendant could neither plead guilty to first degree murder, *see* ch. 427, §§ 1, 2 [1897] Laws of N.Y. 570, *amending* ch. 384, § 1, [1889] Laws of N.Y. 532, *as amended,* N.Y.Code Crim.Proc. § 332 (McKinney Supp.1969), nor waive a jury and be tried for a capital crime to

petitioner never presented this claim to the state courts, but also he relies upon a right which did not come into existence until two decades after his conviction became final. Under all the circumstances, the state courts must be given the first opportunity to rule on this alleged constitutional deprivation.[20]

Also tied in with the recently presented *Jackson* charge of constitutional infirmity of the plea is an additional claim that a pretrial confession allegedly obtained illegally was a significant factor in the entry of his plea. Again evidential support as to this is lacking, petitioner merely asserting "there can be no question of the fact that relator was

induced into a guilty plea by the existence of a confession." [21] Moreover, this claim also is not properly before the court, for although it appears to have been presented to the state coram nobis judge,[22] it was abandoned on the appeal.[23]

▇▇▇▇ These recently advanced contentions and the admittedly exhausted claim of alleged failure to advise defendant of the consequences of his plea are all inextricably intertwined on the issue of voluntariness. It is unrealistic to consider any one of these claims in isolation. The voluntariness of a guilty plea must be determined upon the totality of events and circumstances which

the court. *See* N.Y.Const. art. I, § 2. However, a defendant might, with the consent of court and prosecutor, plead guilty to a lesser offense, such as second degree murder, which did not carry the death penalty. N.Y.Code Crim.Proc. § 342–a (McKinney 1958), *as amended,* (McKinney Supp.1969); *see* McDonald v. Sobel, 272 App.Div. 455, 72 N.Y.S.2d 4, *aff'd,* 297 N.Y. 679, 77 N.E.2d 3 (1947). What scope will eventually be given to *Jackson* thus remains to be determined. *See* United States *ex rel.* Brown v. La Vallee, 301 F.Supp. 1245 (S.D.N.Y.1969), *cf.* Alford v. North Carolina, 405 F.2d 340 (4th Cir. 1968), *prob. juris. noted,* 394 U.S. 956, 89 S.Ct. 1306, 22 L.Ed.2d 558 (1969). *But cf.* State v. Forcella, 52 N.J. 263, 245 A.2d 181 (1968).

Even if *Jackson* is held to cover a statutory scheme such as that in New York, it is as yet unclear whether and to what extent it will be applied retrospectively. *Compare* Alford v. North Carolina, *supra, and* Natale v. United States, 287 F.Supp. 96 (D.Ariz.1968), *with* United States *ex rel.* Buttcher v. Yeager, 288 F.Supp. 906 (D.N.J.1968), *and* Pindell v. United States, 296 F.Supp. 751 (D.Conn.1969), *and* McFarland v. United States, 284 F.Supp. 969 (D.Md.1968) (*semble*). *See also* Bailey v. United States, 405 F.2d 1352 (D.C.Cir. 1968); Sims v. Eyman, 405 F.2d 439, 445 n.3 (9th Cir. 1969).

20. United States *ex rel.* Gallo v. Follette, 270 F.Supp. 507, 514–515 (S.D.N.Y. 1967).

21. *See* United States *ex rel.* Rosen v. Follette, 409 F.2d 1042 (2d Cir. 1969) (en

banc); United States *ex rel.* Ross v. McMann, 409 F.2d 1016, 1021–1022 (2d Cir.) (en banc), *vacated as moot,* 396 U.S. 118, 90 S.Ct. 395, 24 L.Ed.2d 303.

22. Petitioner does not set forth in what respect the confession was coerced. He merely taxes counsel with failure to determine if it "was (a) indeed made by this relator, and (b) if made, whether it had been voluntary or coerced."

23. As already noted, the sole contention on the appeal from the denial of the coram nobis application was that the plea was not knowingly entered, specifically because petitioner was not advised of the range of punishment.

The coram nobis judge held that the guilty plea constituted a waiver of any claim based upon a prior coerced confession. Under present federal law, especially in regard to guilty pleas entered at a time when no constitutionally valid method of testing the voluntariness of a confession existed, *see* Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), this simple waiver rule is no longer valid. Only a voluntary guilty plea waives any objections to prior violations of constitutional rights; and the existence of a prior unconstitutionally obtained confession may be a factor—along with the assistance of counsel, the existence of independent evidence of guilt and similar factors relevant to defendant's state of mind—in evaluating the voluntariness of the plea. United States ex rel. Ross v. McMann, 409 F.2d 1016 (2d Cir.) (en banc), *vacated as moot,* 396 U.S. 118, 90 S.Ct. 395.

preceded its entry.[24] The ultimate question is whether petitioner, at the time he pled guilty, had the free will essential to a reasoned choice. Thus, if petitioner's *Jackson* attack upon the New York death penalty provision is upheld, it will not automatically void his guilty plea. The hazard of a death sentence, had he opted for a jury trial, is but one factor in determining whether the plea was voluntarily entered or impermissibly induced.[25] So, too, the mere existence of a coerced confession, if it is so found, would not by itself vitiate his subsequent plea. Again it is but a factor to be taken into account.[26] Similarly, the mere assertion of lack of understanding of the consequences of the plea is not conclusive and, without more, is insufficient to invalidate the plea. The determination of these claims requires consideration of, among other factors: the weight of the state's case apart from the confession; the advice of counsel; the competence of counsel; the psychological pressures generated by the alternative penalties petitioner faced upon the choices open to him; and his age, experience and mental capacity. Also to be considered is that petitioner entered his plea after consultation with counsel, a factor of substantial weight.[27] Singly, no one factor may have been of substantial motivating force. Yet in combination the cumulative impact may have overcome an accused's free will and unconstitutionally induced his plea. The totality of claims thus forms a single ball of wax.[28] The interrelationship of the various claims which involve evaluation of factors that cross over from one claim to the other forecloses consideration at this time of the exhausted claim as well as the unexhausted claims and requires dismissal of the petition as a whole.

This case is thus unlike recent Second Circuit cases which have, in reliance upon principles enunciated in the per curiam opinion in *Roberts v. LaVallee*,[29] refused to permit the "automatic and uncritical"[30] dismissal of petitions containing fully exhausted claims on the basis of unexhausted but unrelated claims. In *United States ex rel. Sniffen v. Follette*,[31] the Court of Appeals held that petitioner's exhausted claims of self-incrimination and an involuntary guilty plea should not be dismissed because of an unexhausted claim of denial of the right to allocution. But the court stressed that the allocution claim was "completely unrelated to the issue before the federal court."[32] The court also noted that denial of the right to allocution does not warrant relief in fed-

24. United States ex rel. Ross v. McMann, 409 F.2d 1016 (2d Cir.) (en banc), *vacated as moot*, 396 U.S. 118, 90 S.Ct. 395. United States *ex rel*. McGrath v. LaVallee, 319 F.2d 308, 315 (2d Cir. 1963) (Friendly, J., concurring); United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963).

25. Alford v. North Carolina, 405 F.2d 340 (4th Cir. 1968), *prob. juris. noted*, 394 U.S. 956, 89 S.Ct. 1306, 22 L.Ed.2d 558 (1969); Brady v. United States, 404 F.2d 601 (10th Cir. 1968); McFarland v. United States, 284 F.Supp. 969, 977 (D.Md.1968); *see* United States v. Jackson, 390 U.S. 570, 583, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Pindell v. United States, 296 F.Supp. 751, 753 (D.Conn. 1969).

26. United States *ex rel*. Rosen v. Follette, 409 F.2d 1042 (2d Cir. 1969) (en banc); United States *ed rel*. Ross v. McMann, 409 F.2d 1016 (2d Cir.) (en banc), *vacated as moot*, 396 U.S. 118, 90 S.Ct. 395;

27. United States *ex rel*. Ross v. McMann, 409 F.2d 1016, 1021 (2d Cir.) (en banc), *vacated as moot*, 396 U.S. 118, 90 S.Ct. 395.

28. Petitioner himself, with respect to his assorted contentions, recognizes the issue of the coercion of the plea must be determined upon "the 'totality of circumstances' test," in which he includes not only the death penalty provision claim, but others as well.

29. 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).

30. United States *ex rel*. Sniffen v. Follette, 393 F.2d 726, 727 (2d Cir. 1968) (per curiam).

31. 393 F.2d 726 (2d Cir. 1968) (per curiam).

32. 393 F.2d at 727.

eral habeas corpus and that further state proceedings on the exhausted claims would be unavailing.

In *United States ex rel. Levy v. Mc-Mann*,[33] the court reiterated the *Sniffen* doctrine. But again it emphasized that the unexhausted claims were either unrelated to the exhausted claims before the court or, although related, were clearly frivolous. In both *Sniffen*[34] and *Levy*[35] the court recognized that a petition might be dismissed in toto if "the exhausted claims were directly related to the principal unexhausted claim."[36] This is just such a case.[37]

The petition is dismissed.

33. 394 F.2d 402 (2d Cir. 1968).

34. 393 F.d at 727 n.2.

35. 394 F.2d at 404 n.4.

36. *Ibid. See* United States *ex rel.* De-Flumer v. Mancusi, 380 F.2d 1018 (2d Cir. 1967) (per curiam) (conviction on guilty plea; claims of coerced confession and coerced guilty plea based upon invalidity of statutory scheme); United States *ex rel.* McBride v. Fay, 370 F.2d 547 (2d Cir. 1966) (per curiam) (claims based upon use of codefendant's confession against petitioner and rereading of confession to the jury without the presence of defendant, counsel or repetition of limiting instructions), cited in both *Sniffen* and *Levy* as examples of instances in which, although one claim was fully exhausted and the other was not, the entire petition was properly dismissed.

37. United States *ex rel.* Jefferson v. Follette, 396 F.2d 862, 865 (2d Cir. 1968) requires no different result. Here petitioner's exhausted and unexhausted claims may involve separate constitutional bases, but they are all factors in the "totality of the circumstances" which must be considered in determining the issue of voluntariness.