**Ralph RICHMOND, Petitioner,**

v.

**Walter FOGG, Superintendent, Greenhaven Correctional Facility, Stormville, New York, Respondent.**

**No. 77 Civil 232.**

United States District Court, S. D. New York.

June 2, 1977.

Ralph Richmond, pro se.

Robert M. Morgenthau, Dist. Atty., New York City, for respondent; Robert M. Pitler, Norman Barclay, Asst. Dist. Attys., New York City, of counsel.

EDWARD WEINFELD, District Judge.

Petitioner, Ralph Richmond, now serving a sentence of twenty years to life at Green Haven Correctional Facility, Stormville, New York, seeks his release upon a federal writ of habeas corpus. The sentence was imposed following a jury conviction of felony murder in New York Supreme Court. Richmond claims that his judgment of conviction should be voided for constitutional infirmity on the ground that the State's attorney willfully failed to inform the court that two prosecution witnesses had lied in stating they had not been promised leniency in return for their testimony.

Petitioner's conviction stemmed from the brutal stabbing of one John Smith in the early morning hours of August 4, 1971. The trial evidence established that Richmond, impersonating a female prostitute, lured Smith to an apartment house at 48th Street and Ninth Avenue in Manhattan for the purpose of robbing him. An accomplice, Robert Harold, had hidden himself in a hallway of the building. When Richmond and Harold attempted to rob Smith, he resisted, and Richmond stabbed him repeatedly with a knife carried by Richmond, which was left at the scene. Both Richmond and Harold fled the apartment house after the stabbing; Smith, in spite of his wounds, managed to make his way to the street, where he collapsed. Witnesses on the street saw Richmond, still in female attire, leave the apartment building shortly before Smith appeared and run up Ninth Avenue. Smith died in an ambulance while enroute to a hospital.

In his petition for habeas relief, Richmond asserts that, in return for their testimony, two witnesses for the State, Benjamin Samuels and Jerry Burjan, were promised leniency in prosecutions against them for crimes unrelated to those for which Richmond was tried. On September 17, 1971, Samuels and Burjan were incarcerated in the Manhattan House of Detention, or the "Tombs," in connection with an attempted robbery to which they had pled guilty the previous day. At the time, Richmond and Harold were also being detained at the Tombs on charges unrelated to Smith's murder. During Richmond's trial, both Samuels and Burjan testified that,

during their incarceration in the Tombs, Richmond and Harold each told them about luring Smith to the apartment, robbing him and murdering him. On cross examination, each witness denied that any promise of leniency had been made to him with respect to the sentence imposed on his conviction for attempted robbery. Moreover, each witness was fully examined by defense counsel concerning the attempted robbery, the sentence imposed and the circumstances surrounding his appearance as a prosecution witness.

 Clearly, a criminal defendant is entitled to have the State disclose evidence in its possession that could be used to impeach a key prosecution witness.[1] Thus, the prosecution must reveal any promises of leniency or immunity made to such a witness.[2] A failure by the State to discharge this duty, if material under the circumstances, could constitute grounds for vacating the judgment of conviction for denial of due process. The present petition, however, merely contains conclusory allegations that promises of leniency were made; the factual matter that is set forth in no way supports these allegations, and, indeed, often indicates the absence of any promises.

First, Richmond points out that when Burjan denied receiving a quid pro quo for his testimony, the assistant district attorney trying the case was "quick to close the door

to further inquiry" by representing to the court that his office had no knowledge of any agreements concerning leniency. That the prosecution promptly brought this to the court's attention cannot be taken to indicate the existence of a "cover-up," as the petitioner argues. Moreover, the defense attorneys had an adequate opportunity to cross examine both Burjan and Samuels with respect to promises of·leniency, and they fully exploited this opportunity. The assistant district attorney's statement did not cut short this examination; rather, that statement was made at another point during the trial when Burjan was questioned about whether he was acting as a police agent when Richmond told him about Smith's murder. This inquiry was directed to ascertain whether Richmond was entitled to a *Miranda*[3] warning from Burjan upon a claim that the latter was an informer for the prosecution authorities—a claim that was found to be without substance by the State Court.[4]

Second, Richmond claims that the sentences received by Samuels and Burjan on their convictions for attempted robbery were so lenient as to indicate the existence of an agreement with the district attorney's office. On October 19, 1971, approximately two weeks after Samuels and Burjan had reported their conversations with Richmond to the authorities, Burjan was sentenced to

---

1. *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Miller,* 411 F.2d 825 (2d Cir. 1969).

2. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Pfingst,* 490 F.2d 262 (2d Cir. 1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); *United States v. Harris,* 462 F.2d 1033 (10th Cir. 1972).

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. During cross examination, Burjan testified that he had originally spoken to a detective about the Smith murder on September 13, 1971, a date which was prior to his guilty plea and prior to his conversation with Richmond. The defense thus moved for a suppression hearing on Richmond's statements to Burjan,

because the latter had not given Richmond a *Miranda* warning. The assistant district attorney represented to the Court that Burjan had merely become confused about the date on which he first spoke to the detective. He stated that no one from his office was even present when Burjan pled to the attempted robbery charge and that no one was even aware of Richmond's possible connection with the Smith murder, or Burjan's connection with Richmond, until Burjan himself disclosed that information after having spoken to Richmond. On redirect examination, Burjan testified that he had indeed become confused about the dates, and that he first talked to a detective about the Smith murder after his plea and after his conversation with Richmond. At any rate, the time by which Burjan began to cooperate with the authorities is largely irrelevant to the issue whether any agreement concerning sentencing was reached.

time served, or about six months, on his plea of guilty to the attempted robbery, and he was paroled into the custody of the district attorney's office for commitment as a material witness. On the same day, Samuels' sentencing was adjourned pending his cooperation with the authorities, and he, too, was paroled into the custody of the district attorney's office. Samuels then absconded, but was subsequently apprehended, and on May 1, 1973, was sentenced to three years on his conviction for attempted robbery. On June 5, 1973, still prior to the commencement of Richmond's trial, Samuels was resentenced to one year in light of his cooperation in connection with the case against Richmond. Samuels' sentence was comparable to that imposed on other defendants who had been convicted of the same attempted robbery to which he pled guilty; Burjan's sentence was comparatively shorter. Both Samuels, who had jumped bail, and Burjan apparently received sentences based in part on their cooperation with authorities in the prosecution against Richmond. This in itself, however, is not indicative of the existence of any agreements with the district attorney's office concerning sentencing. As the Court of Appeals for this circuit has stated in a similar situation:

> It does not follow from [the commutation of a witness' sentence] that any promise was made to the witness. It is a well understood practice for the prosecutor and the [sentencing authority] concerned to give appropriate consideration to witnesses who have assisted the government. The witnesses concerned are aware that this is so; the jurors and the general public are also aware of this practice. The purpose of the government is to encourage witnesses to tell what they know; that may be accomplished without prior promise in a particular case. Consequently we do not conclude from the fact of the . . . commutation that [the witness] was testifying falsely when he disclaimed any promise.[5]

Richmond further claims that the minutes of Samuels' resentencing establish the existence of an agreement with the district attorney's office. On the contrary, those minutes reveal that the district attorney's office merely brought Samuels' cooperation to the sentencing judge's attention and specifically refrained from making any recommendation as to what sentence should have been imposed. The judge recited these facts, vacated the three-year sentence he had imposed when Samuels had been returned on a bench warrant after jumping bail, and imposed a one-year sentence, which the judge indicated he had intended to impose when Samuels first came before him. If anything, these minutes indicate that no promise was made to Samuels with respect to the actual sentence he would receive.

Finally, Richmond argues that the request of his Legal Aid Society attorney to be relieved from representing him on the appeal from his conviction constitutes positive proof of the existence of an agreement. The application to be relieved was made because the Legal Aid Society had represented Samuels in connection with his plea of guilty to the attempted robbery charge. Petitioner apparently contends that the reference to a conflict of interest in his attorney's affidavit establishes that a deal had been made between the district attorney's office and Samuels. However, in referring to a conflict of interest, Richmond's attorney simply recognized that she could not assist one client in accusing another of perjury. Nothing appears in the portions of the attorney's affidavit quoted to the Court to indicate that an agreement existed, and Richmond has failed to come forward with any evidence that his former attorney was aware of such an agreement. Whether or not there was such an agreement, Richmond's counsel would have been obligated to withdraw. The fact that she did so cannot therefore be taken to support Richmond's present claim.

5. *United States v. Aviles,* 274 F.2d 179, 191 (2d Cir.), *cert. denied,* 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960); *see United States ex rel.*

*Weiss v. Fay,* 232 F.Supp. 912, 914–915 (S.D.N.Y.1964).

In sum, petitioner has failed to support his conclusory allegations of constitutional error with any specific factual averments or evidence tending to substantiate his claim. He has thus not made the minimal factual showing necessary to warrant an evidentiary hearing on his allegations.[6]

 Moreover, in the present case, the witnesses' sentences were imposed prior to their appearance at Richmond's trial, and the witnesses were thoroughly cross examined concerning those sentences. The fact that Samuels had absconded after having been paroled into the custody of the district attorney's office was also fully explored. The jury was thus in an excellent position to evaluate the effect of any leniency in sentencing on the testimony of Samuels and Burjan. Furthermore, defense counsel strenuously argued in summation that Samuels and Burjan were paroled when they were, and received the sentences they did, because of their cooperation with the district attorney's office. Because Samuels and Burjan had already been sentenced by the time Richmond was tried, they had less motive to testify falsely in favor of the State than they might have had they not yet been sentenced. Given these factors, and in light of the testimony of other witnesses against Richmond, the witnesses' failures to divulge any agreements with the district attorney's office—had there been any such agreements—would not have been material and would not warrant issuance of a writ of habeas corpus.[7]

Accordingly, the petition for a writ of habeas corpus is denied.

---

**6.** *See Blackledge v. Allison,* —— U.S. ——, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("specific factual allegations" entitle petitioner to evidentiary hearing); *United States ex rel. Gentile v. Macusi,* 426 F.2d 238, 240 (2d Cir.), *cert. denied,* 400 U.S. 944, 91 S.Ct. 248, 27 L.Ed.2d 249 (1970); *United States ex rel. Brock v. LaVallee,* 306 F.Supp. 159, 163 (S.D.N.Y.1969); *United States ex rel. Weiss v. Fay,* 232 F.Supp. 912, 914 (S.D.N.Y.1964).

**7.** *See United States ex rel. Williams v. Walker,* 535 F.2d 383, 387 (7th Cir. 1976); *United States ex rel. Regina v. LaVallee,* 504 F.2d 580, 583–84 (2d Cir. 1974), *cert. denied,* 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 425 (1975); *United States ex rel. Rice v. Vincent,* 491 F.2d 1326 (2d Cir.), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42

L.Ed.2d 120 (1974). *See also United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (motion for a new trial); *Giglio v. United States,* 405 U.S. 150, 154 (1972) (same). It might also be noted that Richmond's lawyer asserted the existence of a promise at the time of the trial, yet chose not to call apparently available witnesses to establish this contention, which was nevertheless argued to the jury. Such conduct may have constituted a waiver of Richmond's right to contend in a subsequent habeas proceeding that a promise had been made. *See United States ex rel. Regina v. LaVallee, supra,* 504 F.2d at 583; *United States v. Marquez,* 363 F.Supp. 802, 808 (S.D.N.Y. 1973), *aff'd mem.,* 490 F.2d 1383 (2d Cir. 1974).