**UNITED STATES of America ex rel. David Guy BALDWIN Prison No. 42980, Appellant,**

v.

**Howard YEAGER, Principal Keeper, New Jersey State Prison, Trenton.**

**No. 17971.**

United States Court of Appeals, Third Circuit.

Argued Feb. 20, 1970.

Decided June 22, 1970.

Cynthia M. Jacob, Asst. Deputy Public Defender, Newark, N. J., for appellant.

Robert B. Silverman, Gertner & Silverman, Lakewood, N. J. (Robert H. Doherty, Jr., County Prosecutor, Toms River, N. J., on the brief), for appellee.

Before KALODNER and VAN DUSEN, Circuit Judges, and FULLAM, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from the District Court order of April 29, 1969, denying relator's petition for a writ of habeas corpus.

Relator was convicted, after trial to a jury, of first decree murder and sentenced to life imprisonment.[1] Richard Cordine testified that relator had made certain incriminating statements to him, after indictment and without the presence of counsel, while relator was in jail awaiting trial. The introduction of this testimony at trial forms the basis of this appeal.[2]

After his arrest and indictment for murder in October 1964, relator was placed in the isolation area of the Ocean County jail. Cordine, awaiting trial on an assault and battery charge, was in an adjoining cell. According to Cordine's testimony on voir dire,[3] relator and Cordine had almost daily conversations for a period of two months. In January 1965, Cordine was sent to a diagnostic center, apparently because of an emotional problem. At this center he was interviewed by two detectives investigating relator's case.[4] Cordine was at first reluctant to disclose any information, but then reconsidered and told the detectives what he had learned from relator before the interview. No promises were made by the detectives in return for this informa-

1. The facts leading to relator's conviction are reported in the New Jersey Supreme Court's opinion affirming the conviction. State v. Baldwin, 47 N.J. 379, 221 A.2d 199, cert. denied, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966). There was significant evidence to support the jury verdict independent of the testimony of Cordine quoted in footnote 2.

2. The testimony of Cordine before the jury was as follows (the homicide occurred in a State Game Preserve on the first day of the bow and arrow season):
   "A. * * * So, I had asked him about the evidence that they had, you know, pertaining to the case and he had told me everything, all the evidence that he had, that they had against him, the prosecution had against him, and it was quite circumstantial, in my eyes.
   * * * * *
   "A. So, I said to Mr. Baldwin, I said, 'Well, under those circumstances, Mr. Baldwin,' I said, 'why don't you try to plead guilty to second degree murder?' He says, 'Well, it is their burden to prove beyond reasonable doubt that I did kill this man,' and he said, 'right now I feel no immediate danger, but in the event that they ever should get warm, why, I just might ask for that if they would permit me.'
   * * * * *
   "A. Well, we had just got talking about it and he said in the course of this conversation during, you know, about the evidence that they had against him, he just said, 'That it happened to be my luck that it was the first day of bow and arrow season that they discovered the body.'" (Ex. 2, 829–30, 831)

3. Before allowing Cordine to testify, the trial judge conducted an extensive examination, out of the hearing of the jury, to determine if Cordine's testimony was inadmissible under Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

4. At the hearing on the motion for a new trial, a Trenton detective testified that he had received a telephone call on January 19, 1965. As a result of this call, he called the Ocean County detective in charge of the investigation. The content of these two telephone calls was not disclosed because of defense counsel's repeated objections based on the hearsay rule.

tion. The detectives asked Cordine to keep them informed of any further conversations. When Cordine returned to the Ocean County jail, he was placed in a cell with relator, and he talked with relator with a view toward getting information for the prosecution.[5] At extensive interviews held in April 1965, the prosecutor agreed that if Cordine testified against relator, Cordine would be allowed to serve a previously imposed two to four year sentence in a prison other than Trenton, where relator had numerous friends.

On the basis of the voir dire, the trial judge ruled that any statements made by relator to Cordine after his return from the diagnostic center were inadmissible, because after the interview the prosecution had placed Cordine in the cell with relator and Cordine had "deliberately questioned [relator] for the purpose of giving the information to the Prosecutor." However, the judge allowed Cordine to testify to inculpatory statements made by relator prior to Cordine's interview by the detectives.[6]

██ On this appeal, relator argues that any post-indictment statements made without the presence of counsel are inadmissible, even if those statements are made to persons in no way connected with the Government, if testimony concerning those statements is deliberately elicited by the prosecution from the witness to whom they were made.[7] We do not read Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), as requiring such a holding.[8] While Massiah has been clarified by subsequent opinions to exclude all post-indictment statements made to government agents absent proof of effective waiver of counsel,[9] the Constitution does not require the exclusion of post-indictment statements voluntarily given by the defendant to persons in no way related to the Government, regardless of how those statements are later discovered by the prosecution. See United States ex rel. Milani v. Pate, 425 F.2d 6 (7th Cir., 4/2/70); Paroutian v. United States, 370 F.2d 631 (2nd Cir. 1967); Stowers v. United States, 351 F.2d 301 (9th Cir. 1965). Under the facts of this case, the introduction of Cordine's testimony did not violate relator's constitutional rights.[10]

---

5. Cordine testified that prior to his interview by the detectives, his conversations with relator were motivated by no reason other than curiosity.

6. At trial, a cellmate of relator and Cordine testified that Cordine had discussed his interview by the detectives with relator and had told both of them that relator had made no incriminating statements at any time. The jury was properly instructed as to the considerations involved in weighing this testimony. Two months after giving his testimony, Cordine recanted and testified that his trial testimony had been fabricated in return for a promise that his two to four year sentence would be reduced. The trial judge found this later testimony unworthy of belief.

7. Relator's position is stated as follows at page 17 of appellant's brief:
"It is defendant's contention that the Massiah decision creates a blanket prohibition against receipt into evidence of any inculpatory post-indictment statement made, in the absence of an attorney, when the statement is elicited either directly or indirectly, by a law enforcement officer."

8. Significantly, the Court in Massiah noted that it is "entirely proper to continue an investigation of the suspected criminal activities of the defendant * * *, even though the defendant [has] already been indicted." 377 U.S. at 207, 84 S.Ct. at 1203.

9. Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967) (per curiam), rev'g 377 F.2d 181, 188–191 (5th Cir.); McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) (per curiam), rev'g 1 Ohio St.2d 60, 203 N.E.2d 349 (1964); United States ex rel. O'Connor v. New Jersey, 405 F.2d 632, 636 (3rd Cir. 1969); Hancock v. White, 378 F.2d 479, 482 (1st Cir. 1967). Contra Davis v. Burke, 408 F.2d 779 (7th Cir. 1969).

10. We do not hold that under no circumstances would a defendant's constitutional rights be violated by the introduction of post-indictment statements not directly given to a government agent. For example, the logic of recent decisions raises

The relator's remaining contentions are rejected, in accordance with the thorough analysis in Judge Whipple's excellent opinion.[11]

The District Court order of April 29, 1969, will be affirmed.

considerable question whether the Government could introduce statements overheard by the use of an electronic listening device concealed in the defendant's cell, even aside from the Fourth Amendment implications of such a practice. Similarly, if the police deliberately isolated the defendant with prisoners who had in the past cooperated with the police, fully intending to interrogate those prisoners before trial regarding statements made to them by the defendant, it may be that such statements would be inadmissible. As mentioned above, however, there was no indication that such was the scheme in this case, and defense counsel's objections made an inquiry into the circumstances of Cordine's confinement and leading to his interview by the two detectives in January 1965 impossible. See note 4, *supra.*

11. See United States ex rel. Baldwin v. Yeager, 314 F.Supp. 10 (D.N.J.1969). Relator's contention that a new trial was constitutionally required because of the newly ˙discovered evidence (Cordine's recantation) need not be reached, since the state trial court found this "new" evidence unworthy of belief. See note 6, *supra.*