**UNITED STATES of America ex rel. Donald E. RAMSEY, Petitioner,**

**v.**

**John L. ZELKER, Superintendent, Green Haven Correctional Facility, Stormville, New York, Respondent.**

**No. 72 Civ. 1114.**

United States District Court,
S. D. New York.

Feb. 16, 1973.

Robert Kasanof, The Legal Aid Society, New York City, for petitioner; Caren S. Brutten, of counsel.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., New York City, for respondent; Brenda Soloff, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

On October 7, 1967, a young man and a young woman were brutally murdered in the cellar of an apartment building on the lower east side of Manhattan, the woman having been sexually assaulted before she was killed. Petitioner and another were indicted for the murders. Petitioner was also indicted for a separate crime, the rape of one Sharon Hunt on the afternoon of the murders. Two years later petitioner pled guilty to one of the murders, "to cover" both indictments, and he was sentenced to a term of from 15 years to life. Before pleading guilty, petitioner had made substantial motions to suppress physical evidence and certain confessions given on the night after the killings. The ruling denying those motions was appealable under New York law, and petitioner duly appealed it. His appeals having failed, he brings the same questions here as grounds for federal habeas.

The questions thus presented were deemed substantial enough to warrant the assignment of counsel here. Petitioner's claims have now been briefed with care and scholarly imagination. Nevertheless, for reasons hereinafter outlined, the court concludes that the petition must be denied.

1. There is a threshold contention by respondent that the state guilty plea "waived" for purposes of federal habeas the claims urged by petitioner. The contention is answered by United States ex rel. Rogers v. Warden, 381 F. 2d 209 (2d Cir. 1967), and United States ex rel. B. v. Shelly, 430 F.2d 215 (2d Cir. 1970). The latter opinion considered McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), upon which respondent relies, and found it not to require a change from the rule of *Rogers*, under which petitioner is properly here.

2. The facts of petitioner's arrest and confession, and the assertions now made about them, will be recounted and decided here with relative brevity considering the time required for the study of the record leading to this account.

The victims of the murders were found in the east side basement on the morning of Sunday, October 8, 1967. Petitioner's name was mentioned early in the homicide investigation. His arrest, however, came later in the day and resulted from information about the rape of Sharon Hunt.

Information about that rape came to the precinct house by telephone. It seems evident that Sharon Hunt was the source of the information, and we learn from the papers before us that she became aware, during a long afternoon's ordeal of assaults by more than one man, that her assailants included one "Umchism," the quoted name being one used by petitioner. It seems fairly evident, then, that there was probable cause for his arrest, but this, as will appear, is not crucial to the decision herein. At any rate, four detectives went to petitioner's apartment with the purpose of bringing him to the precinct house for viewing by Sharon Hunt.

The officers asked petitioner to come to the basement with them. He was asked whether he had a key to the basement. He said he did, stating he had gotten the key from the basement tenant, and he gave the key to an officer. The door was opened at the time with this key, although one detective had, of course, been to the basement earlier and seen the dead bodies. While there was no search at this point, the key later played a brief role in the suppression hearing.

At about 8:00 p. m., at the precinct house, Sharon Hunt identified petitioner as one of her attackers. Following events unnecessary to narrate here, at some point in the vicinity of 11:00 or 12:00 p. m., petitioner admitted to a Detective Rattley that he remembered hitting the female victim with a brick, but could not recall whether or not he had hit the male. These admissions are central in the arguments petitioner makes here.

At about 1:00 a. m., and again at 4:00 a. m., on October 9, petitioner gave a question-and-answer statement to an assistant district attorney, with a stenographer taking a verbatim record. Thereafter, petitioner went with detectives to some garbage cans near his residence where he said he had thrown his clothes after the killings. The detectives retrieved the discarded garments.

3. The state suppression hearing, extending over some seven court days and producing over 900 pages of transcript, came to focus mainly upon petitioner's confession on the night of October 8, 1967, to Detective Rattley. In the course of the hearing—which, as has been noted, preceded the guilty plea—the prosecutor stated that he would not use at trial the key to the basement surrendered by petitioner or either of the question-and-answer statements taken in the early morning hours of October 9.

The argument most extensively made to the state court was that petitioner—having taken LSD on October 7, a substantial amount of marijuana and amphetamines on that and the following day, and a series of drinks of wine, beer, and rum—was in no condition on the late night of October 8 to make an intelligent, voluntary, self-willed confession of his guilt. There was also an issue whether petitioner had been given the requisite warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), and, if so, whether he had been able to make an informed and intelligent waiver of the protections that decision affords. Having listened to 10 witnesses who had observed petitioner at and around the time of his confession, and having heard the detailed testimony of petitioner himself, the state court ruled firmly against him on these subjects. The state court noted, as has this court, that petitioner, two years after the event, gave a remarkably detailed account of his menu of drugs and liquor on October 7–8, 1967, and a comparably

circumstantial recital of his dealings with the police officers, including an analysis of when he had lied to them and when he had told the truth. Referring to these and other aspects of his extensive record, the state judge announced credibility findings adverse to petitioner among the premises for his ultimate conclusions.[1]

This court has reviewed the state record fully and closely. Like most trial court records, it is not perfect. There are evidentiary rulings which, with hindsight at least, we would make differently. Taken as a whole, however, for purposes of the limited constitutional office this court is commissioned to perform, the state record must be accepted as reflecting "a full, fair, and adequate hearing . . . ." 28 U.S.C. § 2254(d)(6). It follows that the state findings on voluntariness and *Miranda* should be sustained without more.

For his contrary view on the adequacy of the hearing, petitioner points to some proffered testimony excluded by the state judge. Without agreeing with every such ruling, this court finds that all of them together fall short of the conclusion petitioner urges. As has been mentioned, the record contained extensive testimony by a long line of witnesses and by petitioner himself as to his condition at the time of his confession. One Fred Wright, who saw petitioner fleetingly (and five hours or so after the confession which is material here), was not allowed to give a conclusory characterization of his condition. It is not possible to take the exclusion seriously. A similar ruling on the testimony of petitioner's wife (whose relevant knowledge and ability to observe were, on her own testimony, thin to the point of nonexistence) warrants a comparable observation. Again, in a dubious passage of questionable redirect, where the exclusionary ruling seemingly reflected an array of discretionary limitations, petitioner was cut off in a proposed further account of his drug ingestions. Again the point seems minor. Finally, a proposed expert, a doctor licensed abroad but not in this country, was not permitted to state generalities about street-sale amounts of LSD and its effects upon "normal" people. Apart from its other dubieties, the doctor's testimony was undercut by his concession that he lacked an opinion as to the duration of LSD's effects after it is taken.

Other details of petitioner's argument on this subject—relating mostly to somewhat overlapping and obscure "offers of proof" given in the state court —need not now be retraced. The upshot is, as stated, that the state hearing must be sustained as adequate, and its material conclusions stand therefore as final.

Alternatively, insofar as the state court's evidentiary rulings may be deemed to have been technically erroneous, this court finds the errors to have been harmless beyond a reasonable doubt. Cf. United States ex rel. Cronan v. Mancusi, 444 F.2d 51, 56 (2d Cir.), cert. denied, 404 U.S. 1003, 92 S.Ct. 572, 30 L.Ed.2d 556 (1971).

4. There was, petitioner argues, no probable cause for his arrest. His confession, he contends, followed "a direct and unbroken chain" of events from that arrest and should have been suppressed for this reason. Cited for this are Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), Davis v. Mississippi, 394 U.S. 721, 89 S. Ct. 1394, 22 L.Ed.2d 676 (1969), and Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). There appears, in this court's view, to be at least a two-link chain of answers.

To begin with, while the matter is not utterly clear, there are the most powerful indications of probable cause for the arrest. It seems evident that Sharon Hunt reported the rape, gave petition-

---

1. It is noteworthy that immediately after denial of the suppression motions, when petitioner pled guilty with the assistance of energetic counsel, he acknowledged that he had known what he was doing at the time of the crimes—a time much closer to his use of LSD than the time of his confession, 24 hours or so later.

er's name "Umchism," and thus supplied ample basis for his being arrested. It may be, if everything turned on this, that we would be driven nevertheless to hold a hearing because these indications are not neatly nailed home in the state record. But it is fair to note the high probability that such an enterprise would be a waste of time.

█ The conceivable need is obviated by the events following petitioner's arrival at the police station. Assuming there was a constitutional violation in taking him there to be viewed by Sharon Hunt, it remains decisively important for present purposes that Sharon Hunt did in undisputed fact identify him at 8:00 p. m., long before any confession. From that point there was surely probable cause to hold him in custody. There is no realistic basis in fact for talking of an "unbroken chain" from the earlier arrest to the confession. The evidentiary record does not support, but tends on the whole to refute, such a characterization. Because the facts do not require it, we resist the temptation to speculate on such subtle questions as the relationship between the Fourth and the Fifth Amendment. Cf. Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L. Ed.2d 299 (1969); Allen v. Cupp, 426 F.2d 756 (9th Cir. 1970); Thompson v. Warden, Maryland Penitentiary, 413 F. 2d 454 (4th Cir. 1969), cert. denied, 397 U.S. 950, 90 S.Ct. 972, 25 L.Ed.2d 131 (1970); Collins v. Beto, 348 F.2d 823 (5th Cir. 1965); Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666 (1963). Suffice it to say that the early evening arrest cannot serve to invalidate the conviction in question.

█ 5. There is a passing word in the able brief for petitioner about the clothes taken from the garbage can. It may well be that if there had been a trial, having agreed to suppression of the question-and-answer transcripts of 1:00 a. m. and 4:00 a. m., the prosecutor would have accepted the present contention that the subsequent acquisition of the clothing precluded its use as evidence. The fact that there was no express ruling to this effect before petitioner pled guilty cannot serve in these circumstances to nullify his plea and sentence. To hold otherwise would make the habeas jurisdiction in New York guilty-plea cases, designed to avoid making "a trap" of the State's "beneficent" procedure, United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968), a species of trap for the prosecution.

█ If there was error in some sense in the omission formally to suppress the clothing taken from the garbage can,[2] it was harmless beyond a reasonable doubt. There is no suggestion, nor could there be any plausible one, that petitioner, with the confession to Rattley available against him, would not have pled guilty if the clothing had been suppressed.

The petition should be, and it is, denied. So ordered.

The court is indebted to Ms. Caren S. Brutten of the Legal Aid Society and to her Chief, Mr. Robert Kasanof, for an admirably learned and cogent presentation on behalf of petitioner.

2. There is, however, evidence to support respondent's contention that the clothing is not rendered inadmissible under the "cat-out-of-the-bag" theory. Petitioner only confessed to Detective Rattley the killing of the girl, a confession ruled admissible by the hearing court and this court. In the question-and-answer statements, he denied raping either of the girls and denied, or could not recall, killing anyone. Shortly after the second question-and-answer session, petitioner informed Detective Rattley that he had worn other clothing on the night of the murders, and he then led police to where he had concealed it.

In light of the consistent denials or lapses of memory in the question-and-answer statements, it is difficult to accept wholeheartedly the contention that petitioner, feeling "bound" by his admissions in these statements, was pressured by this (rather than his valid and far more damning statements to Rattley) to volunteer the whereabouts of the clothing.