**UNITED STATES of America ex rel. William IRVING, Petitioner,**

**v.**

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

**No. 73 Civ. 989.**

United States District Court, S. D. New York.

Jan. 15, 1974.

---

6. None, however, were specified to be mortgage security claims.

William Irving, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondent; Amy Juviler, Asst. Atty. Gen., of counsel.

EDWARD WEINFELD, District Judge.

Petitioner, now serving a twenty-year sentence at Auburn Correctional Facility, Auburn, New York, pursuant to a judgment of conviction for the crime of manslaughter entered on July 2, 1968 upon his plea of guilty in the Supreme Court of the State of New York, Bronx County, seeks his release upon a federal writ of habeas corpus.

Petitioner had been indicted for murder in the first degree, charged with the killing of an informant involved in counterfeiting activities. He was permitted to plead guilty to the lesser offense of manslaughter. He was represented at the entry of his plea and at his sentence by counsel of his own choice. He seeks to void his judgment of conviction, charging violation of his rights under the Fifth, Sixth and Fourteenth Amend-

ments. Petitioner heretofore has unsuccessfully challenged the judgment of conviction for such alleged violations by direct appeal,[1] applications for collateral relief in the state courts,[2] and a prior habeas corpus petition in this court which was dismissed for failure to exhaust available state remedies.[3] The state acknowledges that petitioner has now exhausted available state remedies.

Defendant's claims in essence are that:

(1) his right to confrontation of witnesses was violated by the state court's pretrial ruling that the testimony of John Bester, a fellow inmate to whom petitioner made inculpatory statements, be perpetuated for trial purposes;

(2) his rights against self-incrimination and to counsel were violated by the court's ruling upon a Huntley hearing[4] that Bester's testimony would be admissible upon petitioner's trial;

(3) his right to due process was violated by the above rulings since they had a coercive effect in inducing his plea of guilty;

(4) his right to due process was violated because sentencing promises that allegedly induced his plea were not honored;

(5) the prosecutor knowingly suppressed evidence favorable to petitioner during the combined perpetuation and Huntley hearing; and

(6) the court's refusal to allow petitioner to withdraw his plea of guilty on the date of sentencing was improper; alternatively, that his withdrawal of his

motion to withdraw the plea was coerced by the court.

◼ The state, relying upon the trilogy of Brady v. United States,[5] McMann v. Richardson,[6] and Parker v. North Carolina,[7] recently reaffirmed by Tollett v. Henderson,[8] urges that petitioner's guilty plea forecloses consideration of all constitutional claims preexisting its entry and that the sole issue to be considered by the court is whether the plea had been made intelligently and voluntarily with the advice of competent counsel. It emphasizes the Court's statement in Tollett:

> "We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann."[9]

Petitioner, however, contends that despite his guilty plea, federal review of his constitutional claims was preserved, since the ruling entered in the Huntley hearing which denied suppression of his incriminating statements to Bester was

1. People v. Irving, 32 A.D.2d 741, 300 N.Y. S.2d 513 (1969), leave to appeal denied.

2. People v. Irving (Sup.Ct. Bronx Co., Nov. 7, 1969); People v. Irving (Sup.Ct. Bronx Co., Dec. 2, 1971); People v. Irving (Sup. Ct. Bronx Co., Feb. 11, 1972).

3. United States ex rel. Irving v. Casscles, 332 F.Supp. 1083 (S.D.N.Y.1970), aff'd, 448 F.2d 741 (2d Cir. 1971), cert. denied, 410 U.S. 925, 93 S.Ct. 1376, 35 L.Ed.2d 586 (1973).

4. People v. Huntley, 15 N.Y.2d 72, 255 N.Y. S.2d 638, 204 N.E.2d 179 (1965).

5. 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

6. 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

7. 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

8. 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

9. Id. at 267 of 411 U.S., at 1608 of 93 S.Ct. of 36 L.Ed.2d.

appealable [10]—in short, there was no deliberate bypass of the state procedure and no waiver of the federal right to contest their admission in evidence for alleged constitutional infirmity.[11] He relies upon United States ex rel. Rogers v. Warden.[12] and United States ex rel. Molloy v. Follette,[13] where our Court of Appeals so held, and also upon a footnote reference in McMann v. Richardson.[14] While the state, with some support,[15] questions the continued viability of the Second Circuit cases and urges their reconsideration, they appear to be controlling.[16] However, since in the instance of an alleged violation of the right of confrontation, unlike the instance of denials of motions to suppress a confession or admission for claimed violations of constitutional rights, the state does not afford appellate review despite a guilty plea, the general rule applies that "a voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings." [17] In this circumstance, the petitioner's plea of guilty forecloses independent consideration of the claimed infringement of his constitutional right of confrontation.[18] However, the alleged facts with respect to that claim may be considered since they are interlaced with and bear upon petitioner's claim that his guilty plea was "involuntary" or "unintelligent" under the *Brady* trilogy as reaffirmed in Tollett v. Henderson. Accordingly, there are presented separate issues: (1) whether defendant's constitutional rights against self-incrimination and to the assistance of counsel were violated by the court's pretrial ruling which perpetuated Bester's testimony, denied his motion to suppress his exculpatory statements and held they would be admissible upon his trial so that the judgment of conviction must be vacated as a matter of law; and (2) whether petitioner's guilty plea was induced by the foregoing ruling as to the admissibility of the inculpatory statements, thereby tainting it as involuntary and unintelligent, an issue which subsumes the standard of the legal advice he received upon the entry of his plea.

I

Since Bester's testimony and the proceedings related thereto are basic to petitioner's various contentions, we first consider them. Bester was a citizen of South Africa, who illegally entered the

10. Former N.Y.Code Cr.Proc. § 813–g (McKinney Supp. 1970–71), then in effect, provided:

"THE MOTION IN GENERAL

"A person claiming to be aggrieved by an involuntary confession or admission may move for the suppression of such confession or admission from use as evidence.

. . . . .

"If the motion is denied, the order denying such may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty."

The foregoing section has been superseded by N.Y.C.P.L. § 710.70(2) (McKinney's Consol.Laws, c. 11–A 1971), effective September 1, 1971.

11. United States ex rel. Rogers v. Warden, 381 F.2d 209, 213 (2d Cir. 1967) ; *see also* Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *Cf.* McMann v. Richardson, 397 U.S. 759, 768–769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

12. 381 F.2d 209 (2d Cir. 1967).

13. 391 F.2d 231 (2d Cir. 1968).

14. 397 U.S. 759, 770 n. 13, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1969) :

"We do not here consider whether a conviction, based on a plea of guilty entered in a State permitting the defendant pleading guilty to challenge on appeal the admissibility of his confession . . . would be open to attack in federal habeas corpus proceedings on the grounds that the confession ers v. Warden, 381 F.2d 209 (C.A.2d Cir. 1967)."

15. *See* United States ex rel. B. v. Shelly, 430 F.2d 215, 221 n. 1 (2d Cir. 1970) (Moore, J., dissenting).

16. *See* United States ex rel. Ramsey v. Zelker, 480 F.2d 916 (2d Cir. 1973), aff'g without opinion, 356 F.Supp. 275 (S.D.N.Y. 1973) ; United States ex rel. B. v. Shelly, 430 F.2d 215, 217 n. 3 (2d Cir. 1970).

17. United States ex rel. Rogers v. Warden, 381 F.2d 209, 212–213 (2d Cir. 1967).

18. Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

United States in 1925. In 1946 he was convicted of murder in the first degree in the killing of his sweetheart and was sentenced to life imprisonment. In September 1965 he was brought to the Men's House of Detention in New York City (the Tombs) pending a Huntley hearing required under an order issued by a United States District Court. While at the Tombs, beginning in February 1967, and until November 1967, he became an informant for the District Attorney's office in New York and voluntarily provided information concerning a number of homicide cases to Frank Reynolds, Chief of the Homicide Bureau, and Vincent Dermody, Chief Assistant, who was in charge of the Bureau following Reynolds' death in November 1967. In return for his cooperation, the prosecution staff agreed to support Bester's application for executive clemency, and if that failed, to cooperate in his petition to void his conviction under his Huntley claim and to recommend acceptance of a plea of guilty to a lesser crime and a sentence to time already served. Pending consideration of his clemency application, Bester was returned to Attica State Prison in November 1967 for a psychiatric examination, but on December 27, 1967, executive clemency was denied. Thereafter the New York County District Attorney's office, to keep its promise to Bester, secured his return to the Tombs on January 11, 1968, so that he could proceed with his application to vacate the judgment of conviction. The District Attorney's office also wanted Bester available to check information previously furnished in connection with the preparation of cases and information Bester had received while at Attica relative to an investigation in another jurisdiction.

Bester's attack upon his judgment of conviction succeeded when it was vacated on May 1, 1968. On May 3 he pled guilty to manslaughter in the first degree before State Supreme Court Justice Mitchell Schweitzer who sentenced him to time already served and discharged him from custody; however, he was detained for deportation to South Africa, his native land, pursuant to a long outstanding warrant which had not been previously executed because of his confinement under the state judgment of conviction.

We now turn to petitioner. He was arrested on January 15, 1968 and arraigned the next day in the Criminal Court of the City of New York on charges of grand larceny, criminal possession of stolen property, unauthorized use of an auto, criminal impersonation, and theft of services. Because he was then a suspect in the Bronx murder for which he now stands convicted, petitioner was held in $50,000 bail, admittedly higher than ordinarily would have been the case as far as the specific charges against him were concerned.

In default of bail, petitioner was lodged in the Tombs where on January 22, for the first time, he met Bester in the presence of two other inmates. At this initial meeting, when petitioner learned that Bester, after twenty-two years' confinement, expected to be released, he sought Bester's advice, first with respect to pending federal counterfeiting charges against him and then, after stepping out of the hearing of the other two inmates, with respect to a homicide, as to which he voluntarily confided to Bester that "I'm the guy who put six bullets in the undercover secret service agent." Bester advised petitioner to cooperate with the authorities and he agreed. With petitioner's consent Bester notified Assistant District Attorney Dermody, then Chief of the Homicide Bureau, of the conversation with petitioner, following which petitioner signed a written consent to an interview with Dermody. On January 25 petitioner met with Dermody, who advised him of his constitutional rights, whereupon petitioner said he did not want his lawyer to be present at the interview or to know anything about it. When petitioner stated the homicide occurred in the Bronx, Dermody explained it was beyond his jurisdiction, terminated the interview and informed petitioner he would

notify the Bronx County District Attorney, to which petitioner assented, and either that day or the next day he was interviewed at the Bronx District Attorney's office. Subsequently, on January 26, Burton Roberts, Chief Assistant District Attorney of the Bronx staff, met Bester for the first time and Bester related his initial conversation of January 22 to Roberts. Roberts instructed Bester just to listen to what Irving said and not to question him, since if he did, such information would not be admissible in evidence. Bester testified that upon his return to the Tombs after this interview it was not his purpose to obtain additional information that could be used. Several days later, while at the Tombs, petitioner initiated several conversations with Bester during which he again made inculpatory statements. He told Bester that the police erroneously believed the deceased was in a car when petitioner shot him and then gave what purported to be the true facts of the homicide and also details of an alibi plan involving Irving's wife and a friend, as well as information as to the disposition of the murder weapon which differed from his initial version. This latter information as to the disposition of the weapon was given after Bester, during the course of petitioner's recital thereof, asked if he was sure the police could not find it, to which petitioner responded by describing how he had disassembled the weapon and thrown it overboard while riding on the Staten Island ferry.

Petitioner was indicted for the crime of murder in the first degree on February 9, 1968. Soon thereafter the state served notice of readiness to proceed to trial. Petitioner's counsel, offering various excuses, said he was not ready. As already noted, Bester, although discharged from state custody on May 3, was detained by virtue of the deportation warrant and was scheduled for imminent departure to South Africa. Faced with the prospect of Bester's unavailability at petitioner's trial, the state, pursuant to statute,[19] moved (1) to perpetuate his testimony in view of petitioner's inculpatory statements, and (2) to determine their voluntariness under the Huntley procedure. The combined hearing was conducted by Supreme Court Justice John M. Murtagh on May 15, 16 and 17. The order of perpetuation was granted after extensive evidence had been received as to Bester's likely unavailability at a trial and the materiality of his testimony; the trial judge was satisfied that there was a reasonable likelihood the outstanding deportation order would be executed since, among other reasons, Bester had cancer and his mother, a resident of South Africa, was 89 years of age and extremely ill—in fact, as described, "on her death bed."

The entry of the perpetuation order by itself did not necessarily mean the unavailability of Bester as a witness in the event of a trial. It was entered to protect the state against the likelihood of Bester's immediate deportation. In the event of a trial, before the perpetuated testimony could have been received in evidence in lieu of Bester's live testimony, the state would have to justify its use by again establishing Bester's unavailability and its good faith effort to secure his presence at the trial.[20]

The immigration authorities were prepared to withhold his deportation if the state proceeded to trial at once. Significantly, when petitioner's counsel opposed the order because, as he stated, he wanted the jury to hear Bester—to appraise his demeanor—the prosecution offered to withdraw its motion to perpetuate and to proceed to immediate trial. The defense counsel rejected this offer out of hand upon a claim that he was not ready for trial since he had not yet made a

19. N.Y.Code of Cr.Proc. §§ 219, 621, 622 (McKinney Supp. 1970–71).

20. Barber v. Page, 390 U.S. 719, 722, 724–725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1969);

N.Y.Code of Cr.Proc. § 631 (McKinney 1958).

motion for a bill of particulars or to dismiss the indictment, although three months had passed since its return by the grand jury.

At the hearing Bester was cross-examined at length by petitioner's counsel with respect to his relationship to the prosecution and to the inculpatory statements. The order for the perpetuation of Bester's testimony under the New York statute involved the exercise of the court's discretion, and, under the circumstances, presents no issue of constitutional dimension. Not only was it well within Judge Murtagh's discretion, but having been made after a full-fledged hearing where petitioner's counsel had fully and completely cross-examined Bester, any claim of denial of his right of confrontation fails.[21] While it is true that a defendant's claim of violation of constitutional rights survives a guilty plea where appellate review is preserved,[22] there is, as already noted, no right of appeal from an order perpetuating testimony. In the circumstances here presented, petitioner's guilty plea constituted a waiver of any pretrial constitutional claim that the perpetuation order violated his right of confrontation of witnesses.[23]

## II

We next consider petitioner's claim that the court's ruling at the conclusion of the Huntley hearing that Bester's testimony as to petitioner's inculpatory statements would be admissible upon his trial violated his Fifth and Sixth Amendment rights against self-incrimination and to counsel. The contention rests upon a claim that Bester was an agent of the prosecution and accordingly petitioner's right against self-incrimination was violated since he was not given the *Miranda* warnings;[24] also he claims that he was deprived of his right to counsel under Massiah v. United States.[25] The prosecution disputed that Bester was its agent and contended that the petitioner's statements were entirely unsolicited and volunteered. The combined perpetuation-Huntley hearing thoroughly probed into the factual issues and constitutional claims.

Bester testified that when he first met petitioner at the Tombs on January 22 he did not know him, his name or the charge against him; that petitioner solicited his help and volunteered information, first, as to his involvement on federal counterfeiting activities and then, as to his role in the homicide.

Bester swore that when Irving enlisted his aid on January 22 and he suggested that Irving cooperate with the authorities, he was not acting as an agent for the prosecution, but as a private citizen; that following his return to the Tombs on January 11, 1968, the prosecution had not asked for his help in this or in any other case; and that he had never worked for Roberts or any other assistant on the Bronx District Attorney's staff.

Assistant District Attorney Dermody fully corroborated Bester's testimony. He testified that Bester's return to the Tombs on January 11, 1968 was principally to carry out the prosecution's commitment to assist in vacating his conviction; that Bester had not been asked to work for the District Attorney's office since it was felt he had, on the basis of past performance, earned his freedom; that he neither knew nor heard of petitioner's existence until January 24, two days after petitioner first talked to Bester. The testimony that the first and only contact that Bester had with As-

---

21. Pointer v. Texas, 380 U.S. 400, 406–407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

22. N.Y.Code of Cr.Proc. §§ 813–c, 813–g (McKinney Supp. 1970–71).

23. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

24. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

25. 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

sistant District Attorney Roberts was after the January 22 conversation was not challenged.. That the incriminating statements were made to Bester and under the circumstances as testified to by him also was not disputed. Petitioner neither testified nor called witnesses at the Huntley hearing.

Judge Murtagh, after a full and fair hearing, found that Bester was not an agent for the prosecution in January 1968, when petitioner made his incriminating statements; that although up to November 1967 Bester had given information to the New York County District Attorney's office, such services terminated at that time; that as to the charge pending against petitioner, in no sense was Bester an agent of the prosecution or the state. Judge Murtagh further found that petitioner's statements were made upon his own initiative to Bester; in sum, that the petitioner " . . . elected to seek counsel and advice from a fellow inmate and, in the course of so doing, volunteered certain information." [26] The trial judge's finding not only was based upon, and is fully supported by, substantial and overwhelming evidence, but any finding to the contrary would require a blatant disregard of the record. The findings were specific and definitive. To suggest that this is a *Miranda* situation borders on the frivolous. The facts are as far as can be from *Miranda*, the underlying rationale of which is protection of the Fifth Amendment privilege against self-incrimination by recognizing "that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which

work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." [27] And the Court made it crystal clear: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." [28] While it is true that petitioner was in a custodial situation on an entirely unrelated charge,[29] it is equally true that there was no questioning by any law enforcement officer, or by any person who even appeared to be clothed with police power. On the contrary, Irving's statements were initiated by him and volunteered, and " . . . it is inconceivable that the defendant could have experienced the coercion-born type of fear and intimidation set forth in *Miranda*, because . . . he thought that he was conversing with a fellow partner in crime, not a policeman." [30]

As to petitioner's claim that the inculpatory statements were obtained in violation of his Sixth Amendment right to counsel enunciated in *Massiah*, we agree with the trial judge's conclusion that the factual situation was totally different from that which existed in *Massiah* and upon which its holding is based. In that case the prosecution deliberately elicited incriminating statements from the defendant with respect to a crime for which he had been indicted and in the absence of his counsel who represented him upon that charge. In this case, as previously pointed out, after a full and fair hearing it was found that Bester was not acting as a government agent during any of the conversa-

---

26. H.R. 179 (May 15–17, 1968).

27. Miranda v. Arizona, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

28. Id., at 444, 86 S.Ct. at 1612.

29. Mathis v. United States, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

30. United States v. Fioravanti, 412 F.2d 407, 413 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969). *See also* Hoffa v. United States, 385 U.S. 293, 304, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Viviano, 437 F.2d 295, 300–301 (2d Cir.), cert. denied, 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971).

tions he had with petitioner either before [31] or after [32] Bester conferred with the New York and Bronx District Attorneys on January 24 and January 26. Moreover, Irving was not under indictment for the homicide when the conversations took place [33] and no other formal adversarial proceedings that could trigger his Sixth Amendment right to counsel [34] had been initiated against him with respect to that charge.[35] Upon the facts, there is no basis for any claim that petitioner's statements to Bester were the consequence of any violation or exploitation of petitioner's Sixth Amendment rights.

With the constitutional principles properly applied to the facts as found by Judge Murtagh, which are overwhelmingly supported by persuasive, uncontradicted evidence, petitioner's challenge must fail.[36] The court's ruling that there was no constitutional prohibition against the use of petitioner's incriminating statements upon a trial was eminently sound.

### III

The petitioner next contends that the court's rulings that Bester's testimony would be perpetuated and that his inculpatory statements would be admitted upon the trial coerced his guilty plea. It is not unusual that after a motion to suppress evidence has failed, a defendant, aware that the prosecutor's case is strengthened, decides upon an appraisal of the evidence in consultation with his lawyer to enter a guilty plea. This is what happened in the instant case. The Huntley hearing went on for two days, May 15 and 16, at the end of which the prosecution announced it rested and the defense stated it would call no witnesses. Events thereafter have some bearing on petitioner's claim of a coerced plea. After an off-the-record bench conference among the court, the prosecutor and petitioner's counsel, the matter was adjourned to the next morning. There can be no doubt that petitioner and his counsel conferred overnight in the light of what transpired the following day. When court convened, the prosecution and defense again announced they rested. Judge Murtagh, after noting that he had already granted the order of perpetuation of Bester's testimony, then ruled that petitioner's alleged incriminating statements or confessions to Bester would be admissible in evidence upon the trial. Thereupon petitioner's

---

31. *See* Paroutian v. United States, 370 F.2d 631, 632 (2d Cir.), cert. denied, 387 U.S. 943, 87 S.Ct. 2077, 18 L.Ed.2d 1331 (1967); Stowers v. United States, 351 F.2d 301 (9th Cir. 1965); United States ex rel. Baldwin v. Yeager, 314 F.Supp. 10, 15 (D.N.J.1969), aff'd, 428 F.2d 182 (3d Cir. 1970), cert. denied, 401 U.S. 919, 91 S.Ct. 905, 27 L.Ed.2d 822 (1971). (A prisoner does not become a government agent merely by hearing incriminating statements and deciding to report them to law enforcement authorities.)

32. *See* Milani v. Pate, 425 F.2d 6, 8 (7th Cir.), cert. denied, 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 107 (1970).

33. *E. g.*, United States v. Tarrant, 460 F.2d 701, 703 (5th Cir. 1972); United States ex rel. Molinas v. Mancusi, 370 F.2d 601, 603 (2d Cir.), cert. denied, 386 U.S. 984, 87 S. Ct. 1285, 18 L.Ed.2d 232 (1967).

34. Kirby v. Illinois, 406 U.S. 682, 688–689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Massiah v. United States, 377 U.S. 201, 208, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (White,

J., dissenting); United States v. Durham, 475 F.2d 208, 210–211 (7th Cir. 1973); United States v. Massimo, 432 F.2d 324, 327 (2d Cir. 1970) (Friendly, J., dissenting), cert. denied, 400 U.S. 1022, 91 S.Ct. 586. 27 L.Ed.2d 633 (1971).

35. Hoffa v. United States, 385 U.S. 293, 309–310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Hayles, 471 F.2d 788, 792 (5th Cir. 1973); United States v. Missler, 414 F.2d 1293, 1302 (4th Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970); United States v. Edwards, 366 F.2d 853, 873 (2d Cir. 1966), cert. denied, 386 U.S. 919, 87 S.Ct. 882, 17 L.Ed.2d 790 (1967). Cf. Saltys v. Adams, 465 F.2d 1023, 1030 (2d Cir. 1972) (Friendly, J., dissenting) (". . . the Sixth Amendment guarantee of counsel is to assist in defending against the crime charged, not against some other not yet charged.")

36. LaVallee v. Delle Rose, 410 U.S. 690. 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

attorney stated his client offered to plead guilty to a reduced charge of manslaughter in the first degree to cover the indictment charge. Roberts recommended its acceptance and detailed the pertinent facts of the defendant's role in the homicide.

With respect to the court's ruling that the inculpatory statements were admissible upon the trial, there were two avenues of review open to petitioner. He could have proceeded to trial and upon their admission in evidence over objection preserve, in the event of conviction, the constitutional claim upon appeal;[37] or he could have waived his right to a trial, plead guilty and still preserve the right of appeal as to the alleged constitutional infirmity. Petitioner chose the latter course. His counsel was not unmindful that at least as to the January 22 inculpatory statements there was little the likelihood of effective challenge to their admissibility upon a trial.[38] It is quite evident that the overnight offer by petitioner to plead guilty to the lesser crime of manslaughter and recommendation of its acceptance by the prosecution was the result of plea bargaining.[39]

Apart from the fact that petitioner's plea to the lesser charge at once eliminated the risk of life imprisonment in the event of conviction upon a trial, another objective fact strongly indicates the plea was freely and voluntarily entered. Petitioner faced criminal charges involving the fraudulent use of credit cards and other fraudulent conduct in

New York and Queens Counties and charges in this court. The prosecutor stated that he would bring to the attention of the authorities in those jurisdictions the fact of petitioner's guilty plea and the sentence to be imposed. The petitioner's attorney thereupon expressed the hope that the court would take into account those "other pending matters at the time of the imposition of sentence . . . ." Obviously this matter had been the subject of discussion between the prosecution and defense.

The trial judge then carefully interrogated petitioner as to whether he had heard the prosecutor's statements as to his role in the crime and whether those statements were accurate, and upon his acknowledgment, closely questioned petitioner in detail as to the voluntariness of his plea. Petitioner responded that it was entered of his own free will and with full understanding of the charge. There is no evidential support for his present claim that the plea was entered otherwise than as acknowledged by petitioner. The record compels the conclusion that not only was the guilty plea a voluntary and intelligent act, but it was so intelligent—indeed so astute—that petitioner succeeded in one fell swoop in disposing of serious criminal charges in state and federal jurisdictions by receiving unconditional discharges and sentences that were concurrent with but of shorter duration than that imposed upon him in the instant case.[40] Moreover, there is nothing to question the accuracy

---

37. Indeed, if petitioner and his counsel believed the rulings to be erroneous, "[t]he sensible course would . . . [have been] . . . to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding, and win acquittal, however guilty he might be." McMann v. Richardson, 397 U.S. 759, 768, 90 S.Ct. 1441, 1447, 25 L.Ed. 2d 763 (1970).

38. Thus he stated: ". . . in my understanding of the decisions—that a *private citizen* need not admonish one who allegedly makes an admission or confession to him, and on the basis of that I find it difficult to understand the necessity for a Huntley hearing . . . ." (emphasis supplied) H.R. 33 (May 15–17, 1968).

39. *Cf.* Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

40. *Cf.* Tollett v. Henderson, 411 U.S. 258, 268, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).
Petitioner's other convictions and sentences were as follows:
(1) *U.S. District Court (S.D.N.Y.):* Indictment 68 Cr. 69 charged petitioner with conspiracy and possession and transfer of counterfeit federal reserve notes in violation of 18 U.S.C. §§ 371, 472, 473. Petitioner originally pled not guilty, but on May 28, 1968 pled guilty to the transfer and conspiracy counts. On March 5, 1970 he was sentenced to concurrent terms of five years im-

or reliability of petitioner's volunteered admissions that he committed the crime to which he pled guilty.[41] Apart from these unchallenged admissions to Bester, petitioner again admitted the commission of the homicide on the two separate occasions when, with his consent, he was interviewed by the New York County and Bronx County District Attorneys and after he had been given the Miranda warnings. Additionally, he again acknowledged the crime at the time of sentencing.

■■ The fact that petitioner was represented by privately retained counsel and acted after consultation with him at the time of the entry of the plea and, again when he reaffirmed it at the sentencing, referred to hereafter, is of substantial weight on the issue of voluntariness.[42] So, too, it is significant that petitioner has not offered an affidavit or statement from his attorney on this subject or any explanation for failure to do so.[43] Petitioner's attorney was of more than average experience not only in criminal matters, but also in the trial of murder cases. There is no contention as to his general professional competency or his competency in handling petitioner's matter. Petitioner has

studiously avoided stating what advice in fact he did receive from his counsel. Petitioner has not submitted, nor is there in the record, anything which in any way impugns the advice petitioner may have received from his experienced attorney.[44] However, the issue is not whether the advice he did receive was right or wrong, but whether it "was within the range of competence demanded of attorneys in criminal cases." [45] There is not the slightest evidential support to show that it was not. There is no basis upon which to sustain the claim that petitioner's plea of guilty was not knowingly and intelligently entered upon the advice of competent counsel.

## IV

■ Petitioner next contends that the sentencing court's refusal to allow him to withdraw his guilty plea was "improper," but there is no support for his claim that as a result his constitutional right to due process of law was violated. Bester was deported several days after the entry of petitioner's guilty plea. Almost two months later, on July 2, 1968, when petitioner appeared for sentence, his attorney stated that petitioner had requested him to move for the withdraw-

prisonment on each count, which were reduced to four years on June 22, 1970.

(2) *U.S. District Court (S.D.N.Y.)*: Indictment 69 Cr. 115 charged petitioner in 22 counts of conspiracy and mail fraud in violation of 18 U.S.C. §§ 371, 1341, 1342. On January 23, 1970 he was convicted by a jury of one count of conspiracy. He was sentenced to a term of three years imprisonment to run consecutively with the sentence imposed that day on indictment 68 Cr. 69.

Pursuant to 18 U.S.C. § 4082, both the above federal sentences were recommended to run concurrently with that imposed upon the conviction here under attack.

(3) *N.Y. Supreme Court, Queens Co.:* Charges relating to stolen credit cards were instituted on January 22, 1968. Subsequent to the imposition of the homicide sentence, petitioner was permitted to plead guilty to attempted grand larceny in the third degree and was given an unconditional discharge.

(4) *N.Y. Supreme Court, New York Co.:* under indictment 82168 petitioner was charged with forgery. He was permitted to plead guilty to petit larceny and, on August

8, 1968, was given an unconditional discharge.

41. *Cf.* Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

42. United States ex rel. Ross v. McMann, 409 F.2d 1016, 1021 (2d Cir. 1969), vacated on other grounds, sub nom. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L. Ed.2d 763 (1970).

43. United States ex rel. Rosen v. Follette, 409 F.2d 1042, 1045 (2d Cir. 1969), cert. denied, 398 U.S. 930, 90 S.Ct. 1822, 26 L.Ed.2d 93 (1970); United States ex rel. Brooks v. McMann, 408 F.2d 823, 826 (2d Cir. 1969); United States ex rel. Brock v. LaVallee, 306 F.Supp. 159, 162 (S.D.N.Y.1969).

44. This omission is all the more glaring since it appears petitioner has been in communication with the attorney, who submitted a letter which does not touch on this issue of advice. (Ex. 3).

45. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

al of the guilty plea. When the court questioned as to the ground, his lawyer responded that petitioner indicated that, with other prosecutions pending against him at the time of entering the plea, he felt "he was under some duress"; that he felt by taking the plea he might dispose of all the other matters (which he did) and that petitioner "voiced a preference to withdraw the plea."[46] The court then inquired of counsel as to the advice given to petitioner and the voluntariness of the plea, and also interrogated petitioner as to his understanding of the charge and his awareness that upon the entry of the plea Bester would no longer be available. Petitioner indicated his understanding of those matters. It is beyond peradventure that Bester's absence would have considerably weakened the state's case upon a trial in the event petitioner's motion to withdraw the plea were granted. Apart from the absence of Bester, the prosecution pointed to the dispersion of other witnesses, and further that, as a result of the guilty plea in the instant case, Irving had already been permitted to plead to lesser crimes in other jurisdictions.[47] The court denied the motion for withdrawal of the plea; this rested in the court's discretion. Its denial presents no federal constitutional issue;[48] moreover, the record of the motion to withdraw abundantly establishes the complete justification for its denial.[49] The fact that the petitioner was "nervous" because other charges were pending against him does not present a claim of constitutional dimension.[50]

The alternative claim that the court coerced and badgered petitioner into rescinding his motion to withdraw his guilty plea, which rescission motion was made after extended discussion during which petitioner, again and with the assistance of his counsel, fully admitted the facts of the crime and his guilt, is utterly without factual support, as the sentencing record clearly demonstrates.

### V

The next contention that the prosecution failed to keep its promises as to charges pending in other jurisdictions is so far wide of the record that it merits no comment other than that not only were the other jurisdictions notified of petitioner's guilty plea, but as a result he fared exceptionally well on the sentences there imposed, and one is at a loss to understand his charge. The prosecution's promise to bring the matter to the attention of the other authorities was made, as was emphasized at the time, "with no commitments whatsoever."[51] The promise was kept, and to petitioner's benefit. Petitioner's vague and conclusory allegations that other promises were made are not only without factual support, but are repelled by the record and do not warrant an evidentiary hearing.[52]

### VI

Petitioner's final attack upon the judgment of conviction charges that the prosecutor knowingly suppressed evidence favorable to him at the Huntley

46. H.R. 3 (July 2, 1968).

47. *See* note 40 *supra.*

48. *Cf.* Dukes v. Warden, 406 U.S. 250, 257, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972) (Stewart, J., concurring); Santobello v. New York, 404 U.S. 257, 267–268, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (Marshall, J., concurring and dissenting).

49. United States ex rel. Rosa v. Follette, 395 F.2d 721, 726 (2d Cir.), cert. denied, 393 U.S. 892, 89 S.Ct. 216, 21 L.Ed.2d 172 (1968); United States ex rel. Scott v. Mancusi, 429 F.2d 104, 110 (2d Cir. 1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651

(1971); United States ex rel. Best v. Fay, 239 F.Supp. 632 (S.D.N.Y.1965), aff'd, 365 F.2d 832 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967).

50. *Cf.* United States ex rel. Best v. Fay, 239 F.Supp. 632, 634–635 (S.D.N.Y.1965), aff'd, 365 F.2d 832 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967).

51. H.R. 183 (May 15–17, 1968).

52. *See* United States ex rel. Brock v. LaVallee, 306 F.Supp. 159, 163 (S.D.N.Y.1969).

hearing. When Bester was asked where he had served his time he listed various penal institutions, but omitted any reference to the Dannemora State Hospital for the Criminally Insane, where he was confined for six and one-half years. Whether this omission was inadvertent or deliberate does not appear.[53] However, there is not the slightest factual showing that Assistant District Attorney Roberts, who was conducting the hearing, was aware at the time that Bester had been confined at Dannemora.[54] In any event, an acknowledgment by Bester that he had been so confined would not have deprived the state of its right to perpetuate his testimony or to offer it upon a trial had petitioner decided to stand trial. It was of no particular significance at the hearing; it was not exculpatory of petitioner; true, in the event of a trial, it could have been availed of for impeachment purposes. Had the prosecutor at the time of the hearing known of the omission, there is no doubt the matter should have been corrected; had the case gone to trial, and in the course of preparation had the prosecution become aware of the fact and withheld it upon trial, perhaps a different situation would exist. But there was no trial; Bester's credibility thereat was not at issue. In sum, the matter does not present any issue of constitutional dimension as to taint the judgment of conviction.

The court has considered all other claims of alleged impairment of federal constitutional rights; these abound in conclusory and vague generalities without evidential support. Merely culling language from federal and state authorities does not satisfy the requirement these charges have some basis in fact.[55]

The state has fully satisfied the requirements of 28 U.S.C., section 2254(d). Nothing has been presented which warrants federal collateral relief.

The petition for a writ of habeas corpus is denied upon the merits.

53. The answer would appear to be an adequate response to the question as put:
"Q From what particular institution were you sent?
"A From Attica State Prison.
"Q Is that where you served your time?
"A No, not all my time, sir.
"Q Where else had you served your time?
"A I first went to Sing Sing. From Sing Sing I went to Auburn State Prison. I remained in Auburn State Prison. From there I was transferred to Clinton Prison. From Clinton Prison in 1962 I was transferred to Attica State Prison to be admitted to the Cancer Hospital in Russell Park Memorial Institute." H.R. 36–37 (May 15–17, 1968).

54. *See* United States v. Houle, 490 F.2d 167 (2d Cir. Dec. 27, 1973).

55. United States ex rel. Best v. Fay, 239 F. Supp. 632, 634 (S.D.N.Y.1965), aff'd, 365 F. 2d 832 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967).